IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RANDALL R. CAMPBELL,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:04-CV-2429-RDP |
| } | |
| **WASHINGTON MUTUAL HOME** } | |
| **LOANS, INC.,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OPINION**

Pending before the court are Plaintiff's Motion for Partial Summary Judgement (Doc. #37) filed on September 29, 2005, and Defendant Washington Mutual Bank's ("WMB") (successor in interest to the named defendant, Washington Mutual Home Loan, Inc.) Motion for Summary Judgment (Doc. #40) filed on September 30, 2005. As indicated to the parties during a prior conference call and as discussed more fully below, the court concludes that the existence of material factual disputes precludes the entry of summary judgment for either side. Accordingly, both motions are due to be denied, and the case is due to be set for a pretrial and trial.

**I.   LITIGATION BACKGROUND**[1]

This is a force-placed insurance case. Plaintiff Randall R. Campbell purchased certain real estate located at 1528 Sibert Drive, Glencoe, Etowah County, Alabama 35905 (the "Property") on April 14, 1992. Plaintiff financed his purchase of the Property through the Etowah County Steelworkers Credit Union (the "Credit Union").

---

[1]The court uses a simple litigation background section as the nature of its opinion on summary judgment does not necessitate a conventional statement of undisputed and/or disputed facts.

On July 24, 1996, Plaintiff refinanced his mortgage (the "1996 Mortgage") on the Property through the Credit Union and obtained a homeowner's insurance policy (the "Policy") with Cotton States Mutual Insurance Company ("Cotton States"). Pursuant to the 1996 Mortgage, Plaintiff made quarterly insurance payments directly to Cotton States.

On February 27, 2002, Plaintiff refinanced his mortgage (the "2002 Mortgage") through The Bank of Rainbow City, the mortgage broker, in favor of Citizens Bank of Elizabethton, TN ("Citizens Bank"), the lender. Pursuant to the financing documents, servicing of the 2002 Mortgage was assigned to WMB effective April 1, 2002, and the first disbursement from escrow relating to hazard insurance premiums was to occur in June 2002. On March 8, 2002, Cotton States sent an invoice to Plaintiff for his final quarterly premium payment under the Policy for the period of June 29, 2001-2002. Pursuant to this notice, $127.78 was due by March 27, 2002. On April 8, 2002, Cotton States mailed to Plaintiff a "Notice of Cancellation" for non-payment of premiums to take effect on April 22, 2002. On April 22, 2002, Cotton States cancelled the Policy for non-payment of premiums. During this same time frame, WMB never received any notice about a premium payment owing or cancellation because of an incorrect mailing address used by Cotton States when substituting WMB as the mortgagee and a loss payee under the Policy. (*Compare* Doc. #42 at Ex. 5 at WaMu 0148 ("P.O. Box 25064[,] Santa Anna, California") *with id.* at Ex. 3 ¶ 20 ("P.O. Box 1900, Santa Anna, California")).

WMB secured force-placed insurance on the Property, after it learned of the cancellation of the Policy by Cotton States due to the non-payment of premiums. However, instead of obtaining insurance covering the Property in the amount of $135,500.00, WMB secured a policy in the amount of $1,355,000.00 with an annual premium of $14,049. (*See, e.g.*, Doc. #42 at Ex. 5 at WaMu 0173,

0178). Plaintiff never contacted WMB about the overstatement of the Property's estimated value made by WMB in securing the force-placed insurance.

Plaintiff then obtained a homeowner's policy with $140,000.00 in coverage from Auto-Owners Insurance Company ("Auto-Owners"). WMB accepted this insurance and notified Plaintiff that the premium due for the lapse period in the amount of $7,010 would be billed to his loan. Plaintiff's escrow account was running a shortage and the monthly mortgage payment amount was increased to $2,628.01 in March 2003. However, Plaintiff continued to make monthly payments in the amount originally called for in the 2002 Mortgage--$577.00.

WMB sent several foreclosure notices to Plaintiff, and on April 20, 2004, WMB foreclosed on the 2002 Mortgage. On May 10, 2004, an ejectment action was filed against Plaintiff, which was later dismissed. Plaintiff has remained in possession of the Property without making payments to WMB.

Plaintiff maintains that WMB was responsible for and failed to make a premium payment which resulted in the cancellation. More specifically, Plaintiff shows (by way of his Customer Account Activity Statement) that he made payment for taxes and hazard insurance at the time of closing and thereafter on a monthly basis. Also, there were sufficient funds in the escrow account to make the hazard insurance payment under the Policy in April 2002, when WMB began servicing the 2002 Mortgage. WMB points out that the insurance installment payment under the Policy was actually due to Cotton States on March 27, 2002, four days prior to the beginning of its servicing term on April 1, 2002. Against this backdrop, Plaintiff alleges liability against WMB on the basis of the Real Estate Settlement Procedures Act ("RESPA"),[2] breach of contract, negligence/wantonness, and fraud. Plaintiff also seeks certain equitable relief.

---

[2]*See* 12 U.S.C. § 2601, *et seq.*

**II.     STANDARD ON SUMMARY JUDGMENT**[3]

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

---

[3] Although there are cross-motions for summary judgment, each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Chambers & Co. v. Equitable Life Assur. Soc. of the U.S.*, 224 F.2d 338, 345 (5th Cir. 1955); *Matter of Lanting*, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996). The court will consider each motion independently, and in accordance with the Rule 56 standard. *See Matsushita Elec. Indus. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact, however, does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, at 327-28 (3d ed. 1998).

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial. *See Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come

forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**III.   ANALYSIS**

Although the court will not discuss every material factual dispute evidenced in the record, the court is nevertheless satisfied that both sides have produced sufficient evidence for a reasonable jury to conclude in his or its favor. For example, on the issue of liability under RESPA for the non-payment of Plaintiff's insurance premium through escrow, by the delivery of additional money at closing and the balances shown on his Customer Account Activity Statement (*see, e.g.*, Doc. #38 ¶ 7; *id.* at Ex. 3), Plaintiff has produced sufficient evidence from which a reasonable trier of fact could conclude that he had the expectation that WMB would be handling the insurance payment due under the Policy out of escrow upon assignment of the mortgage servicing. Consistent with this expectation, WMB has acknowledged that had its mailing address been properly recorded by Cotton States, it would have handled payment of Plaintiff's insurance premium through escrow prior to June 2002. (Doc. #41 ¶ 30).

On the other hand, WMB argues that the Escrow Disclosure Statement signed by Plaintiff (Doc. #42 at Ex. 4 at Campbell 00130) makes it clear that the first premium payment to Cotton States by a mortgagee out of escrow was not to be made until June 2002, despite the change in servicing to take effect on April 1, 2002. Plaintiff counters this argument by noting that the Escrow Disclosure Statement is intended only to be an estimate of payments out of escrow. (*See id.* ("This is an estimate of activity in your escrow account during the coming year based on payments anticipated to be made from your account.")). These (as well as other) disputed issues of material

6

fact over the non-payment of Plaintiff's insurance premium under the Policy require jury determination.

Having determined that the issue of non-payment of Plaintiff's insurance premium through escrow involves disputed issues of material fact, the force-placed insurance claim is similarly triable because WMB's legal right to properly obtain alternative hazard insurance turns upon a factual determination concerning the cause behind the lapse in Plaintiff's insurance coverage with Cotton States. Additionally, issues regarding the incorrect face amount on the force-placed insurance secured by WMB are also suitable for resolution by a jury.

## IV.     CONCLUSION

Neither party has met the burden on summary judgment of demonstrating the absence of any material factual dispute and entitlement to judgment as a matter of law. Accordingly, the court will enter an order denying both summary judgment motions.

**DONE** and **ORDERED** this ____6th____ day of April, 2006.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE